And final case for the morning is United States of America v. Hakeem Hass. Mr. Diamonstein. Your Honor. Good morning. If it pleases the court, good morning. My name is Michael Diamonstein. I'd like to reserve five minutes for rebuttal. Go ahead. We're here today after a trial where Mr. Paris was convicted essentially of two counts of robbery. Now, those are the charges on robbery here. The first is a robbery of a Bradford pizza, and the second robbery, which is the robbery that we've addressed in the court that's insufficient, is the Wawa robbery. As a result of the conviction on the Wawa robbery. Robbery or attempted robbery. Attempted robbery. Yeah. As a result of that attempted robbery, he received a 25-year sentence. Let me ask you something that I haven't been able to determine from the record. Was there ever a motion filed by the defense to sever these two separate? I wasn't trial counsel. I'm going through. The best way I can answer that is it doesn't appear so. I couldn't find one. What appears is that Mr. Capone filed a motion requesting that if the government was going to seek 404B evidence, that the government be required to produce the same. And so sort of the thrust of our argument with respect to that. Was there ever a 404B motion? No, there wasn't. There was not a 404B motion. And to a relevant point, and this is the issue why we suggest that the evidence of the Wawa robbery is completely insufficient to support an attempt, is the trial court instructed the jury. And the site is page 696 of the appendix. The trial judge instructed the jury. Each of these are separate. You can only use the evidence as to each event for that event. Yes. That standard instruction was given here. There's no 404B motion, no 404B order. So we're looking at the evidence of each as applicable only to that specific charge. And we'll hear from the government on that point because they suggest in their brief at one point, as I recall it, that we can consider the evidence of the completed robbery in support of the attempted robbery. But consistent with your position then, let's look at the attempted robbery of the Wawa store and let's look at the evidence, examine that quantum of evidence and why you think it's not sufficient to prove an attempted robbery. Because when you have an attempt, it's almost like that movie with Tom Cruise where there's a- We're really getting into Hollywood this month. I know. And that's why I thought of it. There's sort of like a star chamber that punishes you for future conduct. And that's what the attempt statute does. And the model penal code is so broad with its attempt. In order to prove an attempt, it's the intent and substantial steps. And I believe what this circuit has said is where you don't have specific evidence of intent, the substantial steps must be very unequivocal. So a disguise and a gun. Because he was going to shoot the drunk guy out front because he dated his sister. Let me finish. Yes. And then we have him leave, wait outside, only depart in a car that was driven with the lights off when the police are in the vicinity. What more would we need to have in front of us? At 2 a.m. Thank you. And this is how I answer that question. If he was charged with a federal statute of being up to no good, I'd lose 1,000 times out of 1,000. But that's not what he's being charged with. He's being charged with trying to rob the Wawa, attempting to rob the Wawa. And again, push aside the Breisberg robbery. So all we have is he goes in a Wawa with a disguise, no question about it. He drives slowly out front. Why? Because he was going to rape someone in the Wawa. No, no, wait a minute. Wait a minute. That's not all that we have. He was wearing a disguise. He asked about the daily news. No, no, no. Now, wait a minute. Let's return to the issue of the gun. The store clerk, as I recall, testifies to seeing Mr. Parris walking to and into the store. And as he's walking into the store, the hand is proximate to the gun? Yes, sir. Because he was going to shoot the guy out front, the drunk guy out front. Then why does he keep walking toward the door? Because he's waiting for the – and again, I'm speculating. And what I'm trying to argue to the court is that there's no specific evidence as to intent. When the court looks back at its jurisprudence, especially it's the Everett case. The Everett case talks about the specific – when you only have substantial steps and you need that intent, the rationale behind Everett was there was a specific issue with respect to his intent because he gave a statement. In this case, again, you have – not you, but you as the figure. And you say, well, of course he was trying to rob the place because look what he did. Brideburg robbery. But if you take the Brideburg robbery out, he could have been trying to rape all the people in the store. He could have been waiting for the daily news guy because he wanted to kill himself in front of what he thought was a reporter. He could have been trying to shoot the drunk guy out front that was in an argument or discussion. He didn't need the disguise for that, did he? But we don't know that. Again, without specific evidence as to intent, we're guessing – and what we did is we threw it all in front of the jury and then we just said, well, you heard about Brideburg and we're going to put this one in too. But don't think about Brideburg. He walked into a Wawa with a gun in his pocket, a disguise on, and he got 25 years for it. Respectfully, I suggest to the court we need more specific evidence of intent. But isn't most intent circumstantial? Yes. But what I'm suggesting to the court in this case – I agree with the court. He was up to no good. There was no reason for it. But what I'm suggesting to the court in this case, there's no specific evidence of that. He was trying to rob that Wawa as opposed to doing something else in the fairness. But I don't want to run out of time, of course, unless the court wants me to address more issues with respect to intent, without addressing the renunciation and or abandonment charge. Respectfully – Which we've not adopted up to this point. That's correct. In fact, the only courts in the federal system that have adopted it are the military courts. The 6th, 8th, and 11th have said no. I don't believe D.C. has addressed it. And the other courts haven't addressed it specifically to the best of my research. How can you renounce an attempt, first of all? Logically and semantically explain this to me. Okay, so the model penal code is where we've adopted this from. At common law, the law on attempt wasn't as broad as the model penal code. The people that wrote the model penal code wrote it sort of like that shotgun approach as opposed to a scalpel. But the model penal code included a renunciation defense. Well, I understand that. And this is pure speculation on my part. Having defined a broad notion of attempt, my speculation is that the drafters then, in some kind of compromise, wanted to provide some basis for narrowing, if possible. And along comes their provision of an abandonment. But I'm still trying to figure out also how this works. Because whatever we do, we have to do with an eye toward how it can work in the district courts. So the notion of renouncing an uncompleted offense, an inchoate offense, seems, at least in general, difficult for me to understand. In particular, how do you renounce something after you have taken the substantial steps which ought to have already constituted the offense of attempt? My answer to the court would be this. That sort of comes with the real estate when you expand a criminal sanction as broadly as the attempt sanction does. And I've been thinking about this case for ages. And my hypothetical would be this. I run a law firm. I have a substantial staff that I have to pay every two weeks. August is a tough month for criminal attorneys. Maybe people go on vacation. So I've got a 7-Eleven in my building. I've got to make payroll. I decide I'm going to rob the 7-Eleven. You have a Wawa, though. No, it's a 7-Eleven. I go down to the 7-Eleven when I'm buying my bar and my lunch. I look around. I see where their security is. And I decide I'm going to do it. And because my intent's specific, I write it in Dear Diary, I'm going to rob the Wawa tomorrow. I go home that night and I bring my firearm from work. So now my substantial step is complete. I bring the firearm from home. I stick it in my desk. I decide, Dear Diary, I'm going to do this at 12 p.m. today. At 11.50, a lawyer walks in and says, Hey, Mike, how's the kids? And I go, Oh, my God, what am I thinking? How can I do this to my kids? Even if I don't get caught, I'm going to look at them. I'm going to know that I'm not a man of honor. Or if I do get caught, they're going to be ashamed the rest of their life. Don't I have a right to abandon what I thought was an illegal act? And just to make it easier for you, shouldn't the jury have a right to say, Diamonstein was going to rob that place anyway? If it wasn't for that lawyer saying, How's the kids, then it becomes a factual crime. Isn't that maybe the nub of it? And that is the jury having an opportunity. As hard as it is for me to conceptualize how this works, where given the jury's difficult role here of trying to determine whether a particular series of acts constitute a substantial step, the same evidence that's being considered for purposes of the government's burden of showing a substantial step, in many cases, is the same evidence the defendant is going to rely upon for purposes of saying, Yes, but it only went this far. Therefore, there is a renunciation or an abandonment. Yes, sir. And that's our position, is that the jury should have been instructed by the trial judge. Ladies and gentlemen, you could find him guilty, but you could not find him guilty. And you may take into consideration that maybe that was wrong out front. Maybe that's the reason that he stopped. Not of his own free will. But isn't that about the substantial step is the sufficiency of the act? I'm sorry. It does not really go to the sufficiency of the act. No, that's a separate argument. Right. If the court believes that he had the intent and the substantial step were completed, then yes, it would go to whether or not he renounced and abandoned his burden. Go ahead. I'm sorry. What if in your hypothetical, it's not your office your buddy comes by. You've actually gone down to the 7-Eleven, and as you're beginning to put your hand in your pocket, your buddy comes up and says, hey, Mike, how are the kids? And you think, oh, my God, I can't do this. And you walk out. Is that abandonment? I'm out of time, but can I still answer? Absolutely. That, for me, as a defense lawyer, I say absolutely. Mr. Zlotsky is going to say no, but that's a question for the jury. And if the jury was properly instructed, the jury would be able to say, we listened to the evidence, we saw the demeanor of the witnesses, and we find, yes, Einstein was going to rob anyway. No, he wasn't going to rob anyway. But doesn't that just diminish his intent then? Isn't this all about the proof on the elements? Why do we need an extra explanation? Because if you don't have the intent, you've lost the intent. We'll use Judge Roth's hypothetical. You've lost the intent right there. The jury would be able to decide the crime isn't completed. And again, I'm out of time. Can I answer? Yes. The reason is because the model penal code basically takes that shotgun approach and makes it so big now for this attempt, we need something to rein it in to separate the sharks from the dolphins that you're catching in the net. That's our argument. Let's, before you finish it and move on from the sharks and the dolphins, what does renunciation, what does abandonment add here actually? I mean, does it really, practically speaking, add anything to whether or not, along with the required intent, the steps that have been taken are sufficient to be a substantial step toward completion? Because the reason is we're punishing somebody for something that they didn't do. And just human nature, respectfully, is people make poor choices all the time. And a jury should have been advised, that he abandoned his plan. He didn't go forward with that attempt. Otherwise, I get punished for the mawa robbery. In fact, I get punished, I'm sorry, I get punished for the 7-Eleven robbery. I get punished for the robbery of the 7-Eleven. Even if I decide without my buddy coming in, because I've already had the intent and I took my gun from home, I'm guilty even if I don't do it, and nobody knows. Thank you very much. We'll have you back on rebuttal. Mr. Donahue. Mr. Zaleski. May it please the Court, good morning. The first item of business I'd like to address to the Court is essentially the sufficiency of evidence standard, which in this case, as we have explained or as quoted in Caraballo-Rodriguez, discusses the fact that a verdict must be held by this Court if any rational juror could find that in fact the offense was proven beyond a reasonable doubt. And that rational jury, however, in this case, contrary to suggestions from the government to the contrary, could not consider the evidence from the completed Bridesburg Pizza Shop robbery as proof of intent in the subsequent Walla attempted robbery, could it? I would submit they could, but I'd like to address first just the evidence. Well, I would like an answer to that question, because it is very significant as to what the quantum of evidence is that we are working on for purposes of sufficiency. Do you know if there was ever a severance motion here? My recollection is there wasn't, Your Honor. Okay. And the government never filed a 404B notice as well. That's correct, Your Honor. Well, we filed an indictment, and in the indictment, of course, there contained a notice that we'd be proving this case as well together. Yeah. And that we would submit provided ample notice to the defense that this evidence in this case was coming in. And you do have the standard instruction by the judge, which effectively asks the jury to compartmentalize the evidence, right? That's correct, Your Honor. And in this respect, I'd like to add that it's interesting that these events, that is the two offenses that were indicted, took place so close in time towards each other within a span of less than two weeks, and evidence from each robbery actually proved each of the robberies. There was evidence derived from the second attempt, I should say, attempted robbery, that was used, of course, to prove the first robbery. For example, the color of the firearm that was found in the possession of Mr. Parris's car was silver. That firearm was used as evidence in the case. And you've really got the best of both worlds here, Mr. Zaleski. You got all that evidence in anyway, and a jury having heard all this, you just can't argue to us that you've got a right to rely on the evidence from the completed offense for purposes of the second or subsequent offense, the attempt offense. So why should we find substantial step given the fact that Mr. Parris did nothing more in there than ask about the daily news and then turned around and left? Well, the standard addresses all of the evidence and all the substantial steps. Standing alone, we would submit absolutely still proves the attempt to rob the Wawa robbery. The jury is entitled to draw upon all inferences of the evidence that they heard, and I'm not even going to mention at this point the first robbery, Your Honor, for purposes of addressing your question. And we know from the evidence, as Judge Schwartz has already stated in counsel's argument, that we have a defendant walking up to a Wawa wearing winter clothing at 2 o'clock in the morning on a warm night in May, dressed with a hat that covered his head and his hairstyle, dreadlocks that covered the size of his face. What was that hat? It was a knit cap, a multicolored knit cap of black, gold, red, and green. In addition, he's wearing sunglasses at 2 o'clock in the morning. And as he's walking up to the Wawa, both of the employees, one was outside having a cigarette, Ms. Saxton, and the employee, Mr. Erb, standing at the doorway, both testified that they were terrified at the sight of this defendant walking up dressed in the way he was. Mr. Erb had further ample reason to be terrified because he looked down at the waistline of the defendant and saw he was holding a silver handgun while... Did he say he was holding it? Well, he had his hand on it, it was in his belt, not holding it freely, Your Honor. At the very least, his hand was proximate to the gun. It may have been touching it. Yes, Your Honor. And then the defendant takes the consequential step of entering the Wawa. Unlike the scenario provided by Mr. Dimestein. And once he's in the Wawa, he goes up to the newspaper stand, and the videotape clearly shows him lingering there for a moment. Yes, he asks about the daily news, but the jury was entitled to hear evidence as well about the entire context of that situation. The drunk that was present and was part of the reason why Mr. Erb was standing in the doorway. The problem with accomplishing this crime at that particular moment, and the jury was entitled to defer this, was that there was no one at the cash register. There was no one there. Now, I've been in 7-Elevens, Wawas, Sheetz. I was hoping you would mention Sheetz. I'm from Argentina and that's where the headquarters is. I've been in all these places. Good, good. I can't remember one time when someone wasn't at the counter. I'll buy you an MTO sometime when you're up in the air. I can't remember any time when there wasn't someone at the counter ready to sell you coffee or cigarettes or what have you at one of these places. And lo and behold, in this particular instance at 2 o'clock in the morning, which testimony was it's a pretty busy time because when the bars close in the Bridesburg section of Philadelphia, people were coming in and out all the time and there was nobody there. There was nobody there. And the jury was entitled to defer from the circumstances that what the defendant was doing at this point was trying to figure out what to do because he couldn't get to someone at the cash register. If he went right for Mr. Erb right there, Mr. Erb could have, from the circumstances, the evidence could be drawn, run straight out that door, Your Honor. And that was a problem for the defendant. Now, at this point, the defendant then decides that this isn't the appropriate time. And we know from the evidence, there was additional evidence to indicate that he didn't abandon his attempt to rob the Wawa at that moment in time. He was thinking about coming back. Officer Biles testified that car was slowly going down Gillingham Street, which was just north of the Wawa, with its lights off. And Ms. Saxton made the observation. So we don't have a termination of the sequence of events constituting the attempt at the point he's told no daily news in yet and walks out. The sequence of events supportive of the attempt continues through arrival of the police officers and the car with lights out proceeding down the street. Is that what I understand your theory? That's additional evidence, Your Honor, to show, for instance, intent of the defendant here in this case, which is one of the two events made clear. But I understood you to say that he had not completely – In fact, he stayed in the area and with his companion was proceeding down the street, from which one could infer he was still proceeding with an intent and acts pursuant to that intent to rob the Wawa. I'm asking you, is that your factual theory? That is an inference that the jury could infer from the circumstances that were presented in the trial. That was part of the evidence, yes. And in addition, Your Honor, not only did we have that evidence of intent, which goes to prove that he was attempting to rob the Wawa at that time, he had the hat on still on his head, according to the testimony of Ms. Saxton, further evidence that he was still trying to rob the Wawa. Further, when he was pulled over just a moment later, that hat was off his head. That gun was off his body. It was in the back of the car. If he was in there for an innocent reason, and there was an innocent explanation for his going into the Wawa at that time, why did he need to shed the sunglasses? Why did he need to take off the hat? Why did he need to throw the gun in the back seat? All that was evidence to show consciousness of guilt, and the jury is entitled to infer from that that his intent, by going into the Wawa, was to rob it at that time. If we find a sufficiency of the evidence on attempt, do we need to even get to the issue of abandonment on the theory that judges don't decide things they don't have to decide? Our position is the abandonment theory is not the law, number one. So I would say yes, Ron, that we don't need to go there, because the law, our position is the law is that the elements of the offense as described in the cases already in this circuit about how to prove attempt are covered, and this issue about withdrawing from an attempt is covered in the instructions as was pointed out in the Shelton case. The Shelton case is very instructive on this issue, and they make four main points about this necessity of whether a withdrawal or renunciation defense should be given. But don't you think that at least the fact of Paris' prompt departure from the store after he's been told the daily news has not yet arrived is evidence relevant to abandonment if abandonment is available as a defense? Well, first of all, Your Honor, this goes back to the question I asked your adversary earlier, that it seems to me that some of the same corpus of facts that are relevant to substantial step may also be relevant to a question of abandonment. Well, Shelton says the question of whether a defendant is withdrawn is synonymous with whether he has committed the offense. It's the same question essentially, and that instruction was covered in Judge McLaughlin's instruction to the jury. That question was covered by Judge McLaughlin's instruction to the jury. But another issue is that that's not enough. We would submit that evidence is not enough to justify a renunciation defense if there were one that were to exist because, for one thing, Buttrick suggests that the burden for making this defense is on the defendant. And they told that the burden of persuasion on this issue of whether there's an abandonment or renunciation of the offense conduct. And his simple question about the daily news was just his buying time to justify, arguably, this is an inference the jury could draw. And there's all sorts of possible reasons why the defendant was asking for that daily news. But the jury is entitled to reject, under the sufficiency of evidence standard, to reject that inference. As a matter of fact, there could be all sorts of reasons why he was asking for the daily news, why he was dressed up that way. But if there was a rational explanation for his being there dressed that way that led them to conclude that the reason why he was there was to try and rob that Wawa, that's enough to uphold this decision under Caraballo. It doesn't have to be the only explanation. There could be any number of explanations. I would submit the most logical explanation for what he was doing, which the jury agreed with, was that he was trying to rob that Wawa. And that's why he was there at that time. And that's why he was staring at that cash register and seeing nobody behind it. And, in fact, even in the Model Penal Code instruction on renunciation, the Model Penal Code specifically contemplates a situation where it says, renunciation of criminal purpose is not voluntary if it's motivated in whole or in part by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Well, he could have probably not, if the jury is entitled to infer, and he couldn't anticipate that nobody would be behind the counter when he went into the Wawa at that time. So your point is that even if this instruction were to be given or requested, the evidence would have supported it anyway? Yes, Your Honor. I'm going to say I have a yellow light, Your Honor, unless there's any other questions from the court. There appear not to be. Thank you very much, Mr. Valesky. Mr. Donahue, your brother. Thank you. Again, if it pleases the court, let me preface by saying that there is no innocent explanation for what he was doing in the Wawa that day. I'm not suggesting that he be given the Governor's Medal. He was definitely up to no good. The issue becomes, though, and I'd like to sort of work in reverse order with respect to whether the abandonment or renunciation charge should have been given. If the court takes a look at it, it's in our brief on page 16, renunciation of criminal purpose according to the model penal code. When the actor's conduct would otherwise constitute an attempt under Section 1B or 1C of the section, it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. So the government argues quite persuasively that while he was driving slowly and he took the hat off, yeah, that may be evidence. But your position is simply it's a jury question. That's a fact finder. The fact finder should have been told that. And again, the one thing I want to leave you with, and I don't want to just use all my time because it's here, is our position is just because he thought about committing a crime, just because he took substantial steps with committing a crime, doesn't mean that he can't renunciate the crime. And again, what I thought was a very good example, a court might disagree, is the 7-11 rationale. Because even if you take out my hypothetical of the friend coming to my office, the second I drive from my home with a gun in my pocket and stick it on my desk, I'm guilty. Even if I never leave my office or I go like this, what were you thinking, dum-dum? I've already committed the offense. And if there was an eye in the sky, which there may be, then I'm guilty. How would this proof come in, hypothetically? How would a defendant carry his burden of proof on withdrawal without testifying? I think the same thing that the government argued, the circumstantial evidence. I think that Mr. Capone, trial counsel, could have argued circumstantial. And he argued in the alternative in this case, but he could argue to the court that he has reached his burden by saying, look, he came in, he didn't rob the place, and he left. The issue of whether there was an intervening factor with the drunk man out front or whether the evidence of the car driving slowly out front and the stop of the police officers, that would be a jury question to determine whether or not. But then again, we're going back to whether there was sufficient evidence of criminal intent. And respectfully, Your Honor, for the purpose of this back and forth right here, I'll agree. And not for the purpose of my argument, but let's assume that there was. It's our position, even if you have intent and even if you've taken a substantial step, because of the broad nature of that theory, you must, not you must, the court can do what the court thinks is right, but you must be given the right to abandon that silly thought before you've actually committed the crime, before you've taken that last final act as some of the circuits describe that substantial step. And unless the court has any questions, I thank you for your time. Thank you. Thank you. Thank you, Mr. Donahue-Singh. Thank you, Mr. Zaleski. The case was well argued. We will take it under advisement and we will ask the clerk to adjourn the proceeding. Thank you. Please rise.